UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DORIS WRIGHT,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>BIOMET, INC.; BIOMET ORTHOPEDICS, LLC; BIOMET U.S. RECONSTRUCTION, LLC; BIOMET MANUFACTURING CORP.,<br><br>　　　　　Defendants. | Case No:<br><br>Dkt. No. 3:12-md-2391<br><br>MDL 2391<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff Doris Wright, by and through her attorneys, Carey Danis & Lowe, and for her amended complaint against Defendants, and each of them, states as follows:

1.  This is a product liability case involving a defective hip implant system. Plaintiff Doris Wright, had a Biomet M2a Magnum Metal-on-Metal Hip System ("M2a Magnum Hip System") implanted in both her right hip and her left hip. The M2a Magnum Hip System suffers from defects that cause excessive amounts of cobalt and chromium to corrode and wear from the surfaces of the acetabular cup, the femoral head, and the taper sleeve, which in turn causes the hip implant to fail and the surrounding tissue and bone to die. As a result of these defects, Plaintiff's M2a Magnum Hip System has an unreasonably high risk of failing, causing toxic levels of cobalt and chromium, tissue and bone destruction, and the need for Plaintiff to undergo a complicated and risky surgery to remove and replace the defective implant.

## PARTIES

2.  Plaintiff Doris Wright is over the age of majority and is a citizen and resident of Las Vegas, Nevada, which is located in Clark County.

3. Defendant Biomet, Inc. is and at all times relevant to this Complaint was, an Indiana Corporation with its principal place of business in Warsaw, Indiana.

4. Defendant Biomet, Inc. designed, manufactured, marketed, promoted, and sold the M2a-Magnum Hip system that is the subject of this lawsuit.

5. Defendant Biomet Orthopedics, LLC is, and at all times relevant to this Complaint was, a wholly owned subsidiary of Defendant Biomet US Reconstruction, LLC, an Indiana Corporation with its principal place of business in Warsaw, Indiana.

6. Defendant Biomet Orthopedics, LLC designed, manufactured, marketed, promoted, and sold the M2a-Magnum Hip system that is the subject of this lawsuit.

7. Defendant Biomet US Reconstruction, LLC is, and at all times relevant to this Complaint was, a wholly owned subsidiary of Defendant Biomet, Inc., an Indiana corporation with its principal place of business in Warsaw, Indiana.

8. Defendant Biomet US Reconstruction, LLC designed, manufactured, marketed, promoted, and sold the M2a-Magnum Hip system that is the subject of this lawsuit.

9. Defendant Biomet Manufacturing Corp. is, and at all times relevant to this Complaint was, a wholly owned subsidiary of Defendant Biomet, Inc., an Indiana Corporation with its principle place of business in Warsaw, Indiana.

10. Defendant Biomet Manufacturing Corp. designed, manufactured, marketed, promoted, and sold the M2a-Magnum Hip system that is the subject of this lawsuit.

11. Defendants Biomet, Inc., Biomet Orthopedics, LLC, Biomet US Reconstruction, LLC and Biomet Manufacturing Corp. are collectively referred to herein as "Biomet" or Defendants.

12. At all times relevant herein, Defendants were the agents of each other, and in doing the things alleged herein, each defendant was acting within the scope and course of its agency and was subject to and under the supervision of its Codefendants.

13. Upon information and belief, at all times herein mentioned, the employees of all Defendants, their subsidiaries, affiliates, and other related entities, as well as the employees of the Defendants' subsidiaries, affiliates, and other related entities, were the agents, servants and employees of Defendants, and at all relevant times, were acting within the purpose and scope of said agency and employment.  Whenever reference in this Complaint is made to any act or transaction of Defendants, such allegations shall be deemed to mean that the principals, officers, employees, agents, and/or representatives of the Defendants committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of Defendants while actively engaged in the scope of their duties.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as the parties are citizens of different States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

15. Proper venue for this case is appropriate in the United States District Court for the District of Nevada – Las Vegas Division.  However, pursuant to and in accordance with CMO #2 (doc. 242) dated February 15, 2013, any case subject to transfer to MDL No. 2391 by the Judicial Panel on Multidistrict Litigation pursuant to its October 2, 2012 In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig. Transfer Order may file her or her case directly in the Northern District of Indiana.  Further pursuant to Case Management Order #2 (doc. 242),

Defendants agree to accept a waiver of service of summons by mailing same to 56 East Bell Drive, P.O. Box 587, Attn: Legal Department, Warsaw, Indiana 46581-0587.

## FACTUAL BACKGROUND

### A.     The M2a Magnum Hip System is Defective and Was Not Adequately Tested

16.     The hip joint is where the femur connects to the pelvis.  The joint is made up of the femoral head (a ball-like structure at the very top of the femur) rotating within the acetabulum (a cup-like structure at the bottom of the pelvis.)  In a healthy hip, both the femur and the acetabulum are strong and the rotation of the bones against each other is cushioned and lubricated by cartilage and fluids.

17.     A total hip replacement replaces the body's natural joint with an artificial one, usually made out of metal and plastic.  A typical total hip replacement system consists of four separate components: (1) a femoral stem (labeled as "hip implant" in the diagram to the left), (2) a femoral head, (3) a plastic (polyethylene) liner, and (4) an acetabular shell.  After the surgeon hollows out a patient's femur bone, the femoral stem is implanted.  The femoral head is a metal ball that is fixed on top of the femoral stem.  The femoral head forms the hip joint when it is placed inside the polyethylene liner and acetabular shell.

18.     While most hip replacements use a polyethylene *plastic* acetabular liner, Biomet's M2a Magnum Hip System has a critical difference: it is a monoblock system which does not have an acetabular liner.  Instead, the M2a Magnum Hip System forces metal to rub against metal with the full weight and pressure of the human body.  Because of Biomet's defective design for the M2a Magnum Hip System, hundreds of patients—including Plaintiff—have been forced to undergo surgeries to replace the failed hip implants.

19. The M2a Magnum Hip System suffers from a design or manufacturing defect that cause excessive amounts of cobalt and chromium to wear and corrode from the surface of the acetabular cup, from the femoral head, and from the taper adapter. These cobalt and chromium fragments prompt the body to react by rejecting the hip implant. This rejection often manifests with symptoms of pain, looseness, dislocation, and squeaking and popping sounds. Inside the hip joint, the metal reaction often causes fluids to accumulate and soft tissues and bone to die.

20. The design of the M2a Magnum Hip System was not sufficiently tested by Biomet, and it was never approved by the FDA as being safe or effective for the products' intended purpose.

21. On numerous occasions, Biomet met with orthopedic surgeons in cities throughout the United States to promote the M2a Magnum Hip Implant. At some or all of these meetings, a representative or representatives of Biomet was present. During these meeting, Biomet assured the orthopedic surgeons that the M2a Magnum Hip System was safe, was the best product on the market, had an excellent track record and a low and acceptable failure rate. Biomet continued to "defend" the M2a Magnum Hip Implant even after they became aware of numerous and serious complications with the M2a Magnum Hip System. Biomet did not reveal (and instead concealed) their knowledge of numerous and serious complications and other "bad data" during their meetings with orthopedic surgeons.

**B.     Biomet Sold the M2a Magnum Hip Implant To Plaintiff After It Knew It Was Defective, That It Had Injured Others, And That It Would Injure Plaintiff.**

22. It was not long after Biomet launched the M2a Magnum Hip System that reports of failures began flooding into Biomet. For example, in August 2004, Biomet received a complaint that a patient had to undergo a surgery to remove and replace an M2a Magnum Hip

System because it had become loose after only 3 years. Biomet closed its investigation of this complaint.

23. Biomet would go on to receive hundreds of similar complaints reporting that the M2a Magnum Hip System had failed and that the failure had forced patients to undergo painful and risky surgeries to remove and replace the failed hip component. To date, more than 350 reports of adverse events associated with the M2a Magnum Hip System have been filed with the FDA.

24. By the time Biomet sold the M2a Magnum Hip System to Plaintiff, numerous reports had been filed with the FDA reporting an adverse event associated with the M2a Magnum Hip System. Consequently, Biomet was fully aware that the M2a Magnum Hip System was defective and that dozens of patients already had been injured by that defect. Based on this information, Biomet should have recalled the M2a Magnum Hip System before it was sold to Plaintiff. At minimum, Biomet should have stopped selling the defective implant when it became aware that it had catastrophically failed in several patients.

25. Despite its knowledge that the M2a Magnum Hip System had a defect and that it had failed hundreds of times, causing hundreds of patients to undergo the agony of another surgery, Biomet continues to sell the defective M2a Magnum Hip System. In so doing, Biomet actively concealed the known defect from doctors and patients—including Plaintiff and Plaintiff's doctor—and misrepresented that that the M2a Magnum Hip System was a safe and effective medical device.

26. As numerous failures of the M2a Magnum Hip Implant were reported to Biomet, it continued to actively promote, market and defend the defective products. For example, Biomet published marketing brochures touting the safety and durability of metal-on-metal

implants and specifically, the M2a Magnum Hip System.  These brochures were given to doctors around the world to encourage them to use the M2a Magnum Hip System.

27. Despite its knowledge that the M2a Magnum Hip System was defective, Biomet also made several false representations about specific design elements of the M2a Magnum Hip System that they claimed made it superior to other more safe hip implants on the market.  For example, Biomet said:

- "The M2a-Magnum™ Large Metal Articulation System offers optimal joint mechanic restoration and ultra low-wear rates *in vivo*."
- "Many studies conducted over the last several decades have shown no definitive correlation of negative health issues to ion levels exhibited from metal-on-metal implants."

28. Biomet's reason to conceal the defect in its M2a Magnum Hip System is clear.  Hip implant sales are critically important to Biomet, and the M2a Magnum is one of its most profitable products.  During the time period relevant to this Complaint, Biomet's management was trying to make Biomet look appealing to investors, and they ultimately were purchased by a private equity firm in 2007 for $10 billion.  Biomet was faced with a critical defect in one of its most profitable hip implant systems.  The last thing Biomet wanted to do was to admit that these popular products had a critical defect that could cause a premature failure, forcing patients to have to undergo another painful surgery.  Focused on corporate profits, and at the expense of patient safety, Biomet decided that it would continue to promote, market, and sell the M2a Magnum Hip System despite the fact that it knew the product was defective.  To this day, Biomet continue to sell these defective implants to unsuspecting patients without any warning about the risks or the failures that have been reported to the company.

**C.    Plaintiff's M2a Magnum Hip Systems Are Defective.**

29.    On or about June 12, 2006, Plaintiff Doris Wright underwent a right hip replacement surgery and on June 29, 2009, Plaintiff Doris Wright underwent a left hip replacement surgery. Both surgeries took place in Henderson, Nevada, and during both surgeries, a Biomet metal-on-metal M2a Magnum prosthesis was used and implanted in her body. By this time, numerous reports of adverse events associated with the M2a Magnum had been filed with the FDA and Biomet knew that the product was defective.  But Biomet refused to disclose that information to Doris Wright, her physicians, or the public.  Instead, Biomet misrepresented to Doris Wright and her orthopedic surgeon that the M2a Magnum Hip System was safe and effective.  In reliance on these representations, Ms. Wright's orthopedic surgeon made the decision to use the M2a Magnum Hip System for both hip replacements.  If it were not for the misrepresentations made by Biomet, Ms. Wright's orthopedic surgeon would not have used the M2a Magnum Hip System in Ms. Wright's hip replacement surgeries.

30.    As a result of the defective design, manufacture and composition of the M2a Magnum Hip System, and its accompanying warnings and instructions (or lack thereof), Plaintiff's right hip implant has caused her severe pain and she was forced to undergo costly and painful revision surgery to replace her right metal-on-metal hip device, on March 23, 2015 by Dr. Robert Tait, in Henderson, Nevada.  In addition, Plaintiff is at risk of having to undergo revision of her left metal-on-metal hip device.

31.    Having to go through a revision surgery on the right has subjected Plaintiff to much greater risks of future complications than she had before the revision surgery.  For example, several studies have found that a revision surgery causes a much higher risk of dislocation compared with an original hip replacement surgery.  In one study conducted by

8

Charlotte Phillips and her colleagues at Brigham and Women's Hospital in Boston, 14.4 percent of patients who underwent a revision surgery suffered from a dislocation compared with 3.9 percent of patients who underwent a original hip replacement surgery. In other words, hip replacement patients who have undergone a revision surgery are almost *four times more likely* to suffer from a hip dislocation than those who have not. (Phillips CB, *et al*. Incidence rates of dislocation, pulmonary embolism, and deep infection during the first six months after elective total hip replacement. *American Journal of Bone and Joint Surgery* 2003; 85:20–26.)

32. As a direct and proximate result of the failure of Plaintiff's defective M2a Magnum Hip System and Biomet's wrongful conduct, Plaintiff sustained and continues to suffer economic damages (including lost wages, medical and hospital expenses), severe and possibly permanent injuries, pain, suffering and emotional distress. As a result, Plaintiff has sustained and will continue to sustain damages in an amount to be proven at trial, but which will far exceed $75,000 jurisdictional minimum of this court.

## COUNT I
**(Strict Product Liability)**

33. Plaintiff incorporates all of the preceding paragraphs of this Complaint as if fully set forth here and further alleges as follows:

34. Biomet designed, manufactured, promoted, distributed, marketed, and sold the M2a Magnum Hip System.

35. At all times material hereto, the M2a Magnum Hip System that was designed, manufactured, promoted, distributed, marketed, and sold by Biomet was expected to reach, and did reach, prescribing physicians and consumers, including Plaintiff and Plaintiff's physician, without substantial change in the condition in which it was sold.

36.     At all times material hereto, the M2a Magnum Hip System that was designed, manufactured, promoted, distributed, marketed, and sold by Biomet was in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce. Such condition included, but is not limited to, one or more of the following particulars:

(a)     When placed in the stream of commerce, the M2a Magnum Hip System contained manufacturing defects, subjecting Plaintiff and others to risks, including the risk that the acetabular component would not properly grow into the bone, causing the hip system to prematurely fail and requiring a complex, risky, and painful surgery to remove and replace the defective product;

(b)     When placed in the stream of commerce, the M2a Magnum Hip System contained unreasonably dangerous design defects and was not reasonably safe for the intended use, subjecting Plaintiff and others to risks, including the risk that the acetabular component would not properly grow into the bone, causing the hip system to prematurely fail and requiring a complex, risky, and painful surgery to remove and replace the defective product;

(c)     The M2a Magnum Hip System was insufficiently tested; and

(d)     The M2a Magnum Hip System was not accompanied by adequate instructions and/or warnings to fully inform Plaintiff or Plaintiff's physicians of the full nature or extent of the risks associated with its use.

37.     Biomet knew or should have known of the dangers associated with the use of the M2a Magnum Hip System, as well as the defective nature of the M2a Magnum Hip System. Despite this knowledge, Biomet continued to manufacture, sell, distribute, promote and supply the M2a Magnum Hip System so as to maximize sales and profits at the expense of the public health and safety.  Biomet's conduct was done in conscious disregard of the foreseeable harm

caused by the M2a Magnum Hip System and in conscious disregard for the rights and safety of consumers such as Plaintiff.

38. Plaintiff and Plaintiff's surgeon used the M2a Magnum Hip System as directed for its intended purpose.

39. At all times herein mentioned, the M2a Magnum Hip System was defective, and Biomet knew that it was to be used by the user without inspection for defects therein. Moreover, at the time of the use of the subject products, neither Plaintiff nor Plaintiff's physician knew or had reason to know of the existence of the aforementioned defects. Neither Plaintiff nor Plaintiff's physicians could have discovered the defects in the M2a Magnum Hip System through the exercise of reasonable care.

40. The M2a Magnum Hip System had not been materially altered or modified prior to its implantation in Plaintiff.

41. As a direct and proximate result of the failure of the defective M2a Magnum Hip System, Plaintiff suffered the injuries and damages as described herein.

## COUNT II
### (Negligence)

42. Plaintiff incorporates all of the preceding paragraphs of this Complaint as if fully set forth here and further alleges as follows:

43. At all times herein mentioned Biomet had a duty to exercise reasonable care in the design, manufacture, testing, inspection, labeling, promotion, marketing, and sale of the M2a Magnum Hip System to ensure that it would be safely used in a manner and for a purpose for which it was made.

44. Biomet maliciously, recklessly and/or negligently failed to exercise ordinary care in the design, manufacture, testing, inspection, labeling, promotion, marketing, and sale of the M2a Magnum Hip System.

45. Biomet, maliciously, recklessly and/or negligently made misrepresentations about the safety and effectiveness of the M2a Magnum Hip System to Plaintiff and Plaintiff's orthopedic surgeon. In reliance on these misrepresentations, Plaintiff's orthopedic surgeon decided to use the M2a Magnum Hip Implant in Plaintiff's surgery. If it was not for the misrepresentations by Biomet, Plaintiff's orthopedic surgeon would not have used the M2a Magnum Hip System in Plaintiff's surgeries.

46. Biomet maliciously, recklessly and/or negligently failed in their duty to exercise reasonable care in the provision of an adequate warning to Plaintiff and Plaintiff's physicians as to the risks of the M2a Magnum Hip System.

47. Biomet maliciously, recklessly and/or negligently failed to exercise reasonable care in the post-marketing warnings as to the risks of the M2a Magnum Hip System when they knew or should have known of said risks.

48. Biomet's conduct was done in conscious disregard of the foreseeable harm caused by the M2a Magnum Hip System and in conscious disregard for the rights and safety of consumers such as Plaintiff.

49. As a result of Biomet's wrongful conduct, Plaintiff suffered injuries and damages as alleged herein.

## COUNT III
### (Breach of Implied Warranties)

50. Plaintiff incorporates all of the preceding paragraphs of this Complaint as if fully set forth here and further alleges as follows:

51. Prior to the time that the M2a Magnum Hip System was used by Plaintiff and Plaintiff's physician, Biomet impliedly warranted to Plaintiff and Plaintiff's physicians that the M2a Magnum Hip System was of merchantable quality and safe and fit for the use for which it was intended.

52. Plaintiff and Plaintiff's physician were and are unskilled in the research, design and manufacture of the M2a Magnum Hip System, and they reasonably relied entirely on the skill, judgment and implied warranty of Biomet in using the M2a Magnum Hip System.

53. The M2a Magnum Hip System was neither safe for its intended use nor of merchantable quality, as warranted by Biomet, in that it had dangerous propensities when put to its intended use and would cause severe injuries to the user.

54. Biomet, by selling, delivering and/or distributing the defective M2a Magnum Hip System to Plaintiff, breached the implied warranty of merchantability and fitness and caused Plaintiff to suffer severe pain and emotional distress, incur medical expenses and incur a loss of earning capacity.

55. As a result of the aforementioned breach of implied warranties by Biomet, Plaintiff suffered injuries and damages as alleged herein.

## COUNT IV
### (Breach of Express Warranty)

56. Plaintiff incorporates all of the preceding paragraphs of this Complaint as if fully set forth here and further alleges as follows:

57. At all times herein mentioned, Biomet expressly warranted to Plaintiff and Plaintiff's physicians, by and through statements made by Biomet or their authorized agents or sales representatives, orally and in publications, package inserts and other written materials

13

intended for physicians, medical patients and the general public, that the aforementioned M2a Magnum Hip System was safe, effective, fit and proper for its intended use.

58. In utilizing the aforementioned M2a Magnum Hip System, Plaintiff and Plaintiff's physician relied on the skill, judgment, representations and foregoing express warranties of Biomet.

59. Said warranties and representations were false in that the aforementioned M2a Magnum Hip System was not safe and was unfit for the uses for which it was intended.

60. As a result of the foregoing breach of express warranties by Biomet, Plaintiff suffered injuries and damages as alleged herein.

## COUNT V
**(Violation of Nevada Unfair Trade Practices and Consumer Protection Law)**

61. Plaintiff realleges and reincorporates each of the allegations above as if set forth fully herein.

62. Defendants are liable to the Plaintiff pursuant to the Nevada Unfair Trade Practices and Consumer Protection Law.  Defendants were in the business of manufacturing and marketing the implant.  Defendants and/or their agents designed, formulated, manufactured, assembled, prepared for sale, distributed, and/or sold the implant which was in a defective condition unreasonably dangerous when applied to its intended use in the usual and customary manner.

63. Privity existed between Plaintiff and Defendants.

64. Plaintiff, while using the product in the usual and customary manner as it was intended to be used, suffered substantial injuries as a proximate result of Defendants placing the product on the market, which was unreasonably dangerous and defective at the time it was

placed on the market by Defendants.

66. The implant, at the time of the Plaintiff's injuries and damages, was in substantially the same condition as it was at the time the implant was marketed by the Defendants.

66. As a direct and proximate result of Defendants' conduct, Plaintiff was injured and is entitled to recover damages for her bodily injuries, lost wages, physical and mental pain, past and future medical expenses, past and future pain and suffering, increased risk of future harm and permanent injury. Additionally, Plaintiff is entitled to recover treble damages and reasonable attorney fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment for the following:

A. Past and future lost wages, medical, permanency and incidental expenses, according to proof;

B. Past and future general damages for pain and suffering, according to proof;

C. Punitive and exemplary damages in an amount to be determined at trial;

D. Prejudgment and post judgment interest;

E. Costs to bring this action including attorney fees; and

F. Such other and further relief as the court may deem just and proper.

August 11, 2015                                   Respectfully submitted,

                                                                   CAREY DANIS AND LOWE

                                                                   */s/Jeffrey J. Lowe*  
                                                                   Jeffrey J. Lowe #35114 (Mo Bar)  
                                                                   *jlowe@careydanis.com*  
                                                                   8235 Forsyth Blvd., Ste. 1100  
                                                                   Clayton, MO 63105  
                                                                   (314) 725-7700 or (314) 678-3400  
                                                                   Facsimile: (314) 678-3401

## **Certificate of Service**

The undersigned hereby certifies that the foregoing Complaint has been filed using the Court's CM/ECF system this 11th day of August, 2015, thereby serving all registered parties.

                                                                  */s/Jeffrey J. Lowe*